## Blau, etc., v. Kolla et al.

*Martin Silvert*, for plaintiffs.
*Joseph Atlas*, for defendants.

SLOANE, J., September 12, 1945.—This is an equity suit under the Bulk Sales Act of 1919.

### Statement of the pleadings

*A. Bill of Complaint*

Plaintiff, a business broker, brings her bill of complaint against defendants, Jacob Kolla, the seller, and Daniel Mulholland, the purchaser, of a restaurant and taproom business, 458 E. Wyoming Avenue, Phila-

delphia; she avers that, as broker, she was instrumental in bringing about the sale. On or about September 15, 1944, Kolla, the seller, orally employed her to procure a purchaser for his business; on or about November 20, 1944, plaintiff, by her employe Joseph Abrams, introduced Mulholland to Kolla as a possible purchaser; on December 6, 1944, an agreement of sale of the business for $5,500 was made between the owner, Kolla, and Mulholland, the purchaser; the sale actually took place by payment and delivery on January 4, 1945.

Plaintiff avers that both defendants knew she was a creditor of Kolla to the extent of the $550 commission due her as broker (10 percent of the sale price is the usual commission, plaintiff asserts); that despite this knowledge of her status as a creditor they violated the provisions of the Bulk Sales Act of May 23, 1919, P. L. 262, 69 PS §521 et seq., in that Mulholland failed to demand or receive a statement setting forth Kolla's creditors; that he failed to notify plaintiff of the proposed sale, and failed to see to the proper application of the purchase money.

Plaintiff prays the sale be declared void and fraudulent; that Mulholland be held liable as receiver and the property purchased by him be held for the benefit of Kolla's creditors; that Mulholland be restrained from selling or disposing of the stock and fixtures; that plaintiff be declared a creitor of Kolla in the sum of $550; that Mulholland be decreed to pay plaintiff's claim with costs and interest.

*B. Answer*

Defendants filed a single answer denying the making of the contract with plaintiff, denying that they violated the provisions of the Bulk Sales Act, and averring compliance with the terms of the act.

I decide: (*a*) whether Kolla is indebted to plaintiff, and, if so, in what amount; and if he is, (*b*) whether

plaintiff's prayers under the Bulk Sales Act should be granted.

*Findings of fact*

1. On and before September 15, 1944, plaintiff, Dorothy S. Blau, trading as Blau Brothers, was licensed to engage in the brokerage of business enterprises and real estate.

2. Defendant, Jacob Kolla, was the owner of a taproom and restaurant business at 458 E. Wyoming Avenue, Philadelphia, on or about the said date.

3. On or about September 15, 1944, defendant, Jacob Kolla, entered into an oral agreement with plaintiff, through her agent and employe, Joseph Abrams, whereby Kolla engaged plaintiff to obtain a purchaser for his business and agreed to pay a commission of 10 percent of the sale price, then set at $5,000.

4. (a) Thereafter, plaintiff promoted the sale of the business by advertising and soliciting buyers. Plaintiff sent approximately 30 people to inspect the business. Plaintiff negotiated an agreement of sale of the business to two ex-servicemen, which agreement was canceled because the buyers were unable to obtain a loan for the balance of the purchase price.

(b) Plaintiff introduced defendant, Daniel Mulholland, to defendant, Jacob Kolla, as a prospective purchaser, and conducted the preliminary negotiations for the purchase of the business between these two defendants on or about November 20, 1944. The purchase price was set at $5,500 by Kolla, and defendant Mulholland agreed to pay this amount. No agreement of sale was executed at that time because Mulholland wished to be certain that the lease under which Kolla held the property would be assigned to him.

5. (a) Defendant Kolla, on or about December 10, 1944, informed plaintiff, through Joseph Abrams, that he had changed his mind and was not going to sell his place of business.

(*b*) Notwithstanding this, on December 5, 1944, defendants Kolla and Mulholland had executed an agreement of sale, and the actual sale took place by payment and delivery of possession on January 4, 1945.

6. Defendant, Mulholland, knew that plaintiff effected the sale between defendants, and knew that defendant Kolla was indebted to plaintiff for a commission of $550, and in that amount was Kolla's creditor.

7. Plaintiff was not informed of the sale, and was not paid her commission.

8. An affidavit purporting to comply with the Bulk Sales Act, setting forth that Kolla had no creditors, was given by Kolla to Mulholland.

## *Discussion*

In September 1944 Abrams, plaintiff's employe, met defendant Kolla, who told Abrams he wanted to sell his place of business at 458 E. Wyoming Avenue, Philadelphia, a taproom and restaurant. An oral agreement was made between them (Abrams acting for plaintiff) whereby plaintiff agreed to obtain a purchaser for the business, and defendant agreed to pay 10 percent of the purchase price as commission, the sale price then being fixed at $5,000. Plaintiff then undertook to promote and advertise the sale of the business, and approximately 30 persons were sent to inspect it. Abrams introduced defendant Mulholland to defendant Kolla as a prospect, sometime around November 20, 1944. Mulholland, after inspecting the place, told Abrams he was very much interested in purchasing. The parties met and had a discussion in which it developed the property was held by Kolla under a lease, and Mulholland wanted to be sure he could get a proper lease before purchasing the business. Kolla subsequently notified Abrams that he had changed his mind and was not going to sell his business. This notice was given approximately December 10, 1944. Yet, before

that, on December 5, 1944, the two defendants had actually executed an agreement of sale. They made final settlement on January 4, 1945, Mulholland paying the purchase price and taking possession on that day.

Kolla did testify he made no agreement with plaintiff regarding the sale of his business, or to pay 10 percent of the purchase price as commission; and that he decided to sell, and sold it to Mulholland on his own, because of some neighborhood incident. But he admitted that Mulholland had been brought to him by Abrams. The agreement of sale was dated December 5, 1944, only two weeks after Mulholland and his wife had been taken to inspect the place and discuss the sale with Kolla. Mulholland confirmed Abrams' testimony that Abrams had taken him and his wife to Kolla, and had been present during the preliminary negotiations. Mulholland testified that he asked for and received from Kolla at the time of the execution of the agreement of sale, an affidavit stating that there were no creditors or outstanding obligations at the time of sale. This affidavit is dated December 5, 1944, and was offered in evidence by defendants. When asked about the commission to Blau Brothers, Mulholland answered that he thought the affidavit would cover that.

To me it is pretty clear there was this oral arrangement between Kolla and Abrams, and that in its performance, plaintiff was the one who brought Mulholland to Kolla. The sale of the business came about through plaintiff's efforts. Kolla and Mulholland both were aware of the obligation of Kolla to pay the commission to plaintiff. Their dealings were under cover, and it is easy to see why, for the purpose of eliminating the commission item that was due to plaintiff.

Plaintiff is a creditor of Kolla within the intent of the Bulk Sales Law. It has been so held, and the conclusion runs with logic: Blau, etc., v. Richman et al., 33 D. & C. 481 (1938); Cain v. Samuels, 70 Pitts.

L. J. 152 (1921).[1] Vendee says he inquired of the vendor whether there were any creditors, and that he was informed by him that there were none. He testified that he asked for and got an affidavit to that effect. This forms the basis of defendants' denial that they failed to comply with the requirements of the act. But both were aware that plaintiff had brought defendants together, that she was entitled to a percentage of the proceeds of the sale, so to speak, that she was thus a creditor, and since they joined to forget plaintiff and negate payment of the commission by Kolla, the affidavit in that respect and on that score was hollow. The thinking result thus is that Kolla failed to give a proper affidavit in compliance with the act, and that Mulholland knew Kolla was not giving a proper affidavit. The purpose of the affidavit is to give notice to the purchaser of all creditors of the seller so that the purchaser may discharge his obligation under the act of giving notice to creditors of the sale. Where the purchaser, as here, has notice there is a creditor, and knows the extent of the seller's debt to that creditor, he should see to its inclusion in the affidavit, and the complying with the terms of section 3 of the Bulk Sales Act.

The remedy extended to the creditor by the Bulk Sales Act is by bill in equity: Waverly Oil Works Co. v. Farbacher, 76 Pitts. L. J. 63 (1927) ; General Automotive Supply Co. v. Kamsky, trdg., etc., 33 Dauphin 385 (1930) ; The Union National Bank of Mahanoy City v. Garvey et al., 29 D. & C. 638, 642 (1936) ; Main Line Acceptance Co. v. Koff, 58 Montg. 30 (1941).

### Conclusions of law

1. Defendant, Jacob Kolla, is indebted to plaintiff in the amount of $550, with interest from January 5,

[1] See Penrose v. Damens et al., 33 D. & C. 587 (1938), holding that if a plaintiff broker knows of and participates in the sale,

1945, to the date hereof, under his oral agreement with plaintiff, for obtaining defendant Daniel Mulholland as the purchaser of his business.

2. Plaintiff is a creditor of Jacob Kolla within the meaning of the Bulk Sales Act of May 23, 1919, P. L. 262, 69 PS §252 et seq.

3. Defendant, Jacob Kolla, had a duty to inform defendant, Daniel Mulholland, that plaintiff was a creditor, in the manner provided for in the act.

4. The sale by defendant, Jacob Kolla, to defendant, Daniel Mulholland, was in violation of the Bulk Sales Act.

5. Defendant, Daniel Mulholland, is liable to plaintiff as receiver for the fair value of all the property bought by him from defendant, Jacob Kolla, to the extent of $550, with interest from January 5, 1945, to the date hereof.

### Decree nisi

And now, September 12, 1945, this cause having been heard on bill, answer, and proofs, it is ordered, adjudged and decreed as follows:

1. Defendant, Jacob Kolla, is hereby ordered to pay to plaintiff, Dorothy S. Blau, trading as Blau Brothers, the sum of $550, with interest thereon from January 5, 1945.

2. Defendant, Daniel Mulholland, is hereby declared to be liable to plaintiff as receiver of the merchandise, fixtures, good will, licenses, and all other assets of the taproom and restaurant business located at 458 E. Wyoming Avenue, Philadelphia, Pa., purchased by him from defendant, Jacob Kolla, to the extent of $550, with interest thereon from January 5, 1945.

3. Defendant, Daniel Mulholland, is hereby restrained from selling, transferring, encumbering, or

---

as he did in that case, it might be his duty also to enter into the bulk sales notice to other creditors; that he cannot complain of lack of notice to him. In our case, plaintiff did not know of the sale.

otherwise disposing of the aforesaid assets of the business purchased by him from defendant, Jacob Kolla.

4. The costs of these proceedings shall be paid by defendants.

The prothonotary is directed to enter this decree nisi, and to give notice thereof to the parties or their counsel of record, and unless exceptions are filed within 10 days thereafter, the decree nisi shall become the final decree, as of course.

